**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELIZABETH CASAS,

        Plaintiff,

vs.                                                                                                 No. 1:19-CV-01154-KRS

ANDREW SAUL, Commissioner of
Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Hearing with Supporting Memorandum (Doc. 14), dated April 23, 2020, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Commissioner responded to Plaintiff's motion on July 22, 2020 (Doc. 18), and Plaintiff filed a reply brief on August 4, 2020 (Doc. 19). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in her decision and will therefore GRANT Plaintiff's motion and remand this case back to the SSA for proceedings consistent with this opinion.

**I. PROCEDURAL POSTURE**

On November 3, 2016, Plaintiff protectively filed initial applications for disability insurance benefits and supplemental security income. (*See* Administrative Record ("AR") at 83-84). Plaintiff originally alleged that she had become disabled on June 1, 2009, due to tennis

elbow, diabetes with peripheral neuropathy, back injury, depression, high blood pressure, high cholesterol, knee problems, osteoarthritis, and thyroid issues. (*Id.* at 298, 302). Her applications were denied at the initial level on May 25, 2017 (*id.* at 83-84), and at the reconsideration level on August 10, 2017 (*id.* at 119-20). Plaintiff requested a hearing (*id.* at 186-93), which ALJ Lillian Richter conducted on October 31, 2018 (see *id.* at 43-82). Plaintiff was represented by counsel and testified at the hearing. (*Id.* at 43, 48-76). Vocational expert Teniqua Sheree Nance also testified at the hearing. (*Id.* at 19, 76-81). At the hearing, Plaintiff amended her alleged onset date to July 10, 2014. (*See id.* at 46).

On February 1, 2019, the ALJ issued her decision, finding that Plaintiff became disabled under the relevant sections of the Social Security Act as of her application date of November 3, 2016, and that she was not disabled prior to her date last insured of December 31, 2014. (*Id.* at 19-36). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 242-43), and on October 10, 2019, the Appeals Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. On December 9, 2019, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the

entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v.*

*Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the Commissioner considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 20-21). First, the ALJ found that Plaintiff's date last insured was December 31, 2014 and that she had not engaged in substantial gainful activity since her alleged onset date of July 10, 2014. (*See id.* at 19, 21-22). The ALJ then found at step two that Plaintiff suffered from the following severe impairments since her alleged onset date: depression, plantar fasciitis, diabetes mellitus, lumbar facet arthropathy with disc disease, lumbar spondylosis, mild bilateral osteoarthritis of the hands, acquired hammer toe, and obesity. (*Id.* at 22). The ALJ further found that Plaintiff also suffered from the following additional severe impairments since her application date of November 3, 2016: bilateral lateral epicondylitis, chondromalacia of the right

knee, post-laminectomy syndrome, lumbar radiculopathy, neuropathy, somatic symptom disorder, anxiety, and insomnia.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 22-26). In so holding, the ALJ found that Plaintiff was only moderately limited in all four broad areas of functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; adapting or managing herself), meaning that she did not satisfy the "paragraph B" criteria pertaining to affective disorders under section 12.04, anxiety-related disorders under section 12.06, and somatic symptom disorders under section 12.07. (*See id.* at 24-26).

Proceeding to the next step, the ALJ reviewed the record evidence pertaining to Plaintiff's RFC and limitations both prior to her application date and since that time. (*See id.* at 26-33). As part of this process, the ALJ considered Plaintiff's own subjective symptom evidence as well as the reports and opinions provided by two psychological consultative examiners and other medical sources. (*See id.*). In doing so, the ALJ accorded "significant weight" to the opinions of consultative examiner Louis Wynne, Ph.D. (*see id.* at 32) and only "limited weight" to the opinions of consultative examiner Steven K. Baum, M.D. (*see id.* at 33).

Based on her review of this record evidence, the ALJ concluded that beginning on her application date of November 3, 2016, Plaintiff possessed an RFC to perform sedentary work with certain physical and mental limitations. (*See id.* at 28). The ALJ also held at step five that Plaintiff was unable to perform any past relevant work and that, as of her application date, Plaintiff was unable to perform other jobs existing in significant numbers in the national

economy if she were restricted to the aforementioned RFC. (*See id.* at 33, 35). Accordingly, the ALJ concluded that Plaintiff became disabled effective November 3, 2016. (*See id.* at 35).

However, the ALJ further held that prior to her date last insured of December 31, 2014, Plaintiff possessed a broader RFC to perform light work, albeit with the same physical and mental restrictions included in her post-application RFC. (*See id.* at 26). Although she repeated that Plaintiff was unable to perform past relevant work at any time since her alleged onset date, the ALJ held that Plaintiff had been able to perform other jobs existing in significant numbers in the national economy prior to her date last insured if she had been restricted to this RFC. (*See id.* at 34-35). Thus, the ALJ concluded that Plaintiff was not disabled through December 31, 2014, because her RFC prior to November 3, 2016 did not preclude her from working. (*See id.* at 35).

## IV. DISCUSSION

Plaintiff challenges the ALJ's weighting of opinions provided by Dr. Baum (the "CE") and the ALJ's assessment of Plaintiff's own subjective symptom evidence. (*See* Doc. 14 at 11-21). Because the Court concludes that the ALJ erred in her evaluation of the CE's opinions, the Court does not reach Plaintiff's additional claims of error concerning her subjective symptom evidence. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The CE conducted his consultative evaluation of Plaintiff on October 19, 2018. (*See* AR at 1204-08, 1211-14). In the course of this evaluation, the CE spent half an hour reviewing statements from Plaintiff's sister, one hour conducting a clinical interview of Plaintiff, and three hours conducting psychometric tests. (*See id.* at 1204). The CE also spent an additional three hours reviewing Plaintiff's "medical record," which included treatment records from the

University of New Mexico Health Sciences Center dating back to 2009,[1] treatment records from First Choice Community Healthcare dating to at least 2014,[2] treatment records from DaVita Medical Group dating to 2016, the results of an earlier consultative examination, the March 2017 function report submitted by Plaintiff, and two third-party statements. (*See id.* at 1204-05). Following this evaluation, the CE concluded that Plaintiff was moderately or markedly limited in her understanding and recalling abilities, and he found that she was markedly limited in almost all abilities under the remaining three broad areas of functioning. (*See id.* at 1211-12). The CE further concluded from this review that Plaintiff possessed an affective disorder that satisfied the "paragraph A" criteria of the relevant Appendix 1 listing and that resulted in marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. (*See id.* at 1213). However, the ALJ ultimately accorded "little weight" to these opinions. (*See id.* at 33).

Plaintiff raises multiple challenges to the ALJ's evaluation of the CE's opinions. (*See* Doc. 14 at 12-16). The Commissioner does not substantively respond to any of Plaintiff's arguments except to state that the ALJ's reasoning was sufficient to justify her weighting of the CE's opinions and that Plaintiff merely asks the Court to impermissibly reweigh the evidence. (*See* Doc. 18 at 8-11). Plaintiff replies that her challenges concern the "legal adequacy" of the ALJ's weighting of the CE's opinions, not whether the weighting was supported by substantial evidence. (*See* Doc. 19 at 4). Accordingly, the Court focuses solely on the issue of whether the

---

[1] The CE's review notes that the records from UNM date to "2012-2017." (*See* AR at 1205). However, the same entry notes a diagnosis of depression in page 22 of the records, which the CE correctly describes as dating to November 19, 2009. (*See id.*); (*see also id.* at 395) (UNM treatment notes from November 19, 2009, found on page 22 of Exhibit 1F, discussing diagnosis of depression).

[2] Although the First Choice records date back as far as 2010 (*see* AR at 461-501), the CE only cited a diagnosis of depression dating to July 10, 2014 (*see id.* at 476), which he mistakenly transcribed as "7/10/11" (*see id.* at 1205).

ALJ applied the correct legal standards in rejecting[3] the CE's opinions. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted) (noting that remand is required where ALJ fails to correctly apply governing standards).

Although Plaintiff also raises other objections, the primary crux of her argument is that the ALJ either disregarded or misrepresented certain probative evidence that supports the CE's opinions. In particular, Plaintiff contends that the ALJ failed to address relevant findings by the CE when concluding that his opinions were unsupported by those findings, misrepresented the scope of the evidence reviewed by the CE, and ignored other ways in which the CE's opinion was consistent with the record. (*See, e.g.*, Doc. 14 at 12-15). Having thoroughly reviewed the CE's report and the record as a whole, the Court concludes that Plaintiff's arguments to this effect are generally well-taken and that remand is required.

When weighing medical opinions provided by a medical source such as a consultative examiner, the ALJ must consider multiple factors, including the extent to which the source's opinions are supported by relevant evidence and the consistency of the medical opinion with the record. *See* 20 C.F.R. § 404.1527(c)(3)-(4).[4] When addressing any of these factors, the ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).

---

[3] The according of "little weight" to a medical opinion is functionally equivalent to rejecting that opinion. *See Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

[4] Plaintiff's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.920c do not apply to this proceeding. Although Plaintiff applied for benefits under both Title II and Title XVI, the Court hereinafter cites only to the regulations promulgated under Title II and does not also cite to the parallel regulations under Title XVI.

Moreover, the ALJ may not "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Rather, an ALJ must provide "appropriate explanations for accepting or rejecting" medical opinions. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[5]

In this case, the problems begin with the ALJ's focus on the CE's mental status examination findings, which she held were "inconsistent with the level of severity [the CE] assessed." (*See* AR at 33). As an initial matter, "mental status examinations (MSE) document a clinician's observations of the patient *at a particular point in time*." *See McGehee v. Saul*, No. 18-cv-1164 KK, 2019 WL 6219507, at *6 (D.N.M. Nov. 21, 2019) (emphasis added). As such, while it is entirely proper for an ALJ to consider MSE findings when evaluating the supportability of a medical opinion concerning a claimant's overall mental functioning and limitations, such findings are not necessarily dispositive to this analysis. *See id.* (rejecting weighting of medical source's opinions due to purportedly inconsistent MSE findings); *see also, e.g.*, *Martinez v. Comm'r of Soc. Sec. Admin.*, No. 6:18-3332-CV-RK, 2020 WL 39199, at *2 (W.D. Mo. Jan. 3, 2020) ("Although these mental status reports suggest Plaintiff was capable of acting appropriately at particular moments in time, they do not speak to Plaintiff's ability to consistently appear for work, stay on task, and perform appropriately. Accordingly, this is an insufficient justification to disregard [the medical provider's] opinion."); *cf. Roper v. Saul*, No. 18-cv-549-GJF, 2019 WL 4394049, at *11 n.34 (D.N.M. Sept. 13, 2019) (noting ALJ's

---

[5] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference). Although SSR 96-5p has been rescinded for claims filed on or after March 27, 2017, *see* SSR 96-2p, 2017 WL 3928298, at *1 (Mar. 27, 2017), that guidance remains entitled to deference here because Plaintiff's claims were filed before that date.

disinclination to use Global Assessments of Functioning as "an indication of overall functioning" since such scores are merely "'snapshot[s]' of functioning at a particular time").

But even if this were not the case, the more serious substantive problems stem from the ALJ's characterization of the CE's MSE findings, which she describes in relevant part as showing Plaintiff "*to be oriented* and behaviorally appropriate[] with intact object recall." (*See* AR at 33) (emphasis added). In fact, the ALJ found that Plaintiff was only "oriented x2"[6] (*see id.* at 1204), rather than fully "oriented" as the ALJ appears to suggest. As previously noted, an ALJ must take care to accurately characterize the evidentiary record. *See Bryant*, 753 F. App'x at 641 (an ALJ may not "mischaracterize" evidence).[7] Her failure to do so here is especially impactful because the ALJ did not explain how the CE's finding that Plaintiff was only *partially* oriented during her MSE was inconsistent with his opinion that Plaintiff possesses moderate to marked limitations in all four broad areas of functioning. (*See* AR at 1211-12). Nor did the ALJ adequately explain how Plaintiff's object recall during her MSE was inconsistent with, for example, the CE's finding of only moderate limitations in remembering locations, remembering work-like procedures, and remembering very short and simple instructions. (*See id.* at 1211). The ALJ's failure to elaborate on these points, at least to the extent that the Court could follow her reasoning, was error. *See, e.g.*, *McGehee*, 2019 WL 6219507, at *6 ("To the extent there may be legitimate reasons for discounting [psychiatric] opinions because they are inconsistent with his MSEs, the ALJ failed to articulate with sufficient specificity those reasons."); SSR 96-5p, 1996

---

[6] An individual is "oriented x4" when she is oriented as to person, place, time, and situation. *See, e.g.*, *Austin v. Saul*, No. 19-cv-604-JM, 2020 WL 4336071, at *4 n.4 (S.D. Cal. July 28, 2020) (citation omitted). Consequently, someone who is only "oriented x2" is not fully oriented. *See, e.g.*, *Lane v. Walgreen Co.*, No. 1:12-cv-1180-SEB-TAB, 2014 WL 2881543, at *1 n.1 (S.D. Ind. June 24, 2014).

[7] Less problematically, the ALJ also stated that Plaintiff "performed serial 7s" during her MSE (*see* AR at 33), when in fact her serial 7s were "correct but to one place" (*see id.* at 1204). While this misstatement is not so egregious as to amount to a significant misrepresentation of the evidence to the same extent as the ALJ's discussion of orientation, it does suggest that the ALJ was somewhat sloppy in her discussion of the CE's MSE findings. On remand, the ALJ will ensure that she describes the CE's findings with more care.

WL 374183, at *5 (ALJ must provide "appropriate explanations" for rejecting opinions); *see also, e.g.*, *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (unpublished) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)) (rejecting weighting where ALJ's failure to provide clear reasoning "call[s] into question the ALJ's application of the appropriate legal standards"); *cf. Keyes-Zachary*, 695 F.3d at 1166 (holding that weighting is proper where reviewer can "follow the adjudicator's reasoning" and "determine that correct legal standards have been applied").

Equally troubling to the Court is the ALJ's failure to meaningfully address other probative MSE findings by the CE that were at least facially consistent with his opinions. In addition to his observations concerning orientation and object recall, the CE also reported that Plaintiff's mood was "anxious," that her affect was "blunted," that she had a "below normal fund of knowledge," that she possessed a "social and emotional age" of "approximately early adolescence" despite being 54 years old at the time, that she was impaired in making social judgments and planning for the future, and that she scored well below "the clinical cutoff for detecting neurocognitive impairment." (*See* AR at 1204-05). Rather than discussing how these findings might reasonably be construed as supporting the CE's conclusion that Plaintiff is moderately or markedly limited in understanding, concentration, social interaction, or adaptation (*see id.* at 1211-12), the ALJ entirely collapsed these findings into a single dismissive acknowledgment that Plaintiff "scored low on the Mini Mental Status Examination" before focusing on the CE's findings as to orientation and recall (*id.* at 33). Such "downplay[ing]" of probative evidence is not permitted. *See Bryant*, 753 F. App'x at 641. Further, the ALJ's decision to specifically highlight the few MSE findings that (in some cases arguably) undermine the CE's opinions, without discussing the CE's remaining MSE findings in any meaningful sense,

11

amounts to an improper "picking and choosing" among medical evidence, *see Carpenter*, 537 F.3d at 1265.

The ALJ further held that "nothing in [the CE's] *examination findings*"—presumably meaning his MSE findings—"support[ed] his conclusion that his opinion dates back prior to the date last insured," *i.e.*, December 31, 2014. (*See* AR at 33) (emphasis added). Again, though, the MSE only reflected the CE's observations of Plaintiff "at a particular point in time," namely the date of the MSE itself. *See, e.g.*, *McGehee*, 2019 WL 6219507, at *6. Put another way, an MSE standing alone is not necessarily *intended* to support any opinions concerning a claimant's function as of prior dates. *See id.* More relevant to the CE's analysis on this point was his "medical record review," in which he considered and discussed records from at least five medical sources, apparently dating as far back as *2009*, as well as third-party reports from Plaintiff's sister/caretaker and a friend. (*See* AR at 1204-05). Although the CE spent three hours reviewing these longitudinal medical records and statements in order to assess Plaintiff's limitations as of her date last insured (*see id.* at 1204), and although he compared and contrasted his MSE findings to these records (*see, e.g.*, *id.* at 1206), the ALJ wholly failed to address his reliance on these materials (*cf. id.* at 33). In other words, the ALJ again failed to adequately discuss probative medical evidence relevant to both the supportability and consistency of the CE's opinions. *See Clifton*, 79 F.3d at 1010; *see also* 20 C.F.R. 404.1527(c)(3)-(4) (discussing factors to consider when weighing medical opinions). And by instead misleadingly asserting that the MSE findings did not support the CE's retrospective findings—a purpose that they were not necessarily intended to serve in the first place—the ALJ again misrepresented the evidence. *See Bryant*, 753 F. App'x at 641.

To be sure, not all of the considerations addressed by the ALJ in assessing the CE's opinions were wholly out of bounds. For instance, Plaintiff complains that the ALJ improperly supported her rejection of the CE's retrospective opinions by pointing out that she "sought and received little mental health treatment" during the period in question. (*See* AR at 33). As Plaintiff observes, "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations," and "attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations." (*See* Doc. 14 at 14) (quoting *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished)). However, an opinion's consistency with the medical record as a whole is a valid factor to consider when weighing that opinion. *See* 20 C.F.R. § 404.1527(c)(4). In assessing the consistency of the CE's opinions with that record, the ALJ was permitted to consider the fact that Plaintiff had not previously sought treatment from a mental health professional. *Cf., e.g.*, *Sawyer v. Barnhart*, 89 F. App'x 148, 152 (10th Cir. 2004) (unpublished) (affirming ALJ's conclusions regarding severity of claimant's depression based on *inter alia*, "her lack of treatment with a mental health professional"). While these authorities establish that the ALJ might have just as easily drawn a different conclusion from Plaintiff's lack of previous treatment, they do not permit the Court to hold that she *must* have done so. *See, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted) ("[A court] may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'").

Nevertheless, the ALJ's repeated failures to appropriately address probative evidence that on its face tends to support the CE's opinions resulted in a weighting determination that did not adhere to the governing legal standards. *See Byron*, 742 F.2d at 1235 ("Failure to apply the

correct legal standard . . . is grounds for reversal."). Because the ALJ accorded weight to the CE's opinions based in large part on a selective reading (and in some ways a selective misreading) of the CE's MSE findings, without adequately explaining how his opinions were purportedly unsupported by those findings, and without sufficiently addressing the probative evidence that appeared to support his conclusions, the ALJ committed legal error. *See, e.g.*, *Clifton*, 79 F.3d at 1009-10; *see also, e.g.*, *Jones*, 514 F. App'x at 823 (citing *Keyes-Zachary*, 695 F.3d at 1166). Accordingly, remand is required so that the ALJ may properly evaluate the CE's opinion pursuant to controlling standards as described herein.

## V. CONCLUSION

The ALJ erred in her review of Plaintiff's application for disability insurance benefits and supplemental security income by failing to properly weigh the CE's opinions pursuant to governing legal standards. Accordingly, Plaintiff's Motion to Reverse and Remand for a Hearing (Doc. 14) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**